UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STONEBRIDGE LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:10-CV-1231 (CEJ) ) |
| NANETTE LITHERLAND, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This interpleader matter is before the Court on the motion of plaintiff Stonebridge Life Insurance Company for discharge and an award of attorney's fees in the amount of $18,883.50 and costs in the amount of $678.24. Defendants Jay Wade and Letha Braga have filed a joint response; defendant Nanette Litherland has also filed a response. Responding defendants do not object to plaintiff's request for discharge, but do oppose an award of attorney's fees in the amount requested.

I.  **Background**

Plaintiff Stonebridge Life Insurance Company filed this action to determine who is entitled to receive the proceeds of three policies insuring the life of Jerry B. Litherland. The policies were purchased by defendant Nanette Litherland between April 2006 and March 2009, and have a face value of $220,000. On November 8, 2009, Mr. Litherland was shot to death; Nanette Litherland and Thomas R. Buhler have been charged in connection with his death.

Stonebridge filed this action pursuant to Rule 22, Fed.R.Civ.P., on July 9, 2010, naming as defendants Nanette Litherland, a minor child M.L., Benjamin W. Buhler,

Letha Braga, and Jay Wade.[1] Plaintiff also filed a motion to deposit the face amount of the insurance policies "along with interest calculated at 9% per annum . . . from the date of death of Jerry B. Litherland (November 8, 2009) to the date Stonebridge deposits the monies with the clerk of the Court." The Court granted the motion on July 15, 2010. Counsel for Stonebridge then determined that the policies provided that interest began to accrue when it received proof of loss rather than the date of death and requested an amended order to deposit the proceeds. On July 28, 2010, plaintiff deposited $230,197.00 into the registry of the Court.

On September 16, 2010, the Court directed plaintiff to file motions for entry of default and default judgment with respect to four defendants for whom no answers or other responsive pleading had been filed. Counsel for plaintiff contacted the defaulting defendants and, on October 8, 2010, Benjamin W. Buhler filed a *pro se* answer. On October 11, 2010, plaintiff timely filed motions for entry of default and for default judgment against the remaining three defendants, including defendant M.L., who filed an untimely answer that same day. Plaintiff also filed a Disclosure of Corporation Interests Certificate; on October 22, 2010, plaintiff filed an amended disclosure. On November 5, 2010, plaintiff filed the present motion for discharge and attorney's fees and costs.

II. **Discussion**

The purpose of an interpleader action is to shield a disinterested stakeholder from the costs of having to defend against multiple suits, and from the risk of multiple liability or inconsistent obligations when several claimants assert rights to a single

---

[1] Plaintiff also named and served Thomas R. Buhler and the DeClue family Funeral Home. They did not file answers and the Court has granted plaintiff's motions for default judgment with respect to these defendants.

-2-

stake. S & W Foreclosure Corp. v. Okenfuss, 2010 WL 106675 *1 (E.D. Mo. Jan. 6, 2010). Where a stakeholder is disinterested and has deposited the stake into the Court registry, the Court may dismiss it from the interpleader action, leaving the claimants to prosecute their conflicting claims. Id. There is no dispute that Stonebridge is a disinterested stakeholder and the motion for discharge will be granted.

In cases brought pursuant to Rule 22, federal district courts have followed the traditional equity rule that gives the trial court discretion to allow a disinterested stakeholder to recover costs and attorney's fees from the stake itself. American Life Ins. Co. of N.Y. v. Karnes, 2007 WL 4365732 *2 (W.D. Mo. Dec. 11, 2007) (citing Millers Mut. Ins. Assoc. v. Wassall, 738 F.2d 302, 304 (8th Cir. 1984); 4 James Wm. Moore, Moore's Federal Practice, § 22.06 (3rd ed. 2002)). "In the usual case the fee will be relatively modest, inasmuch as all that is necessary is the preparation of a petition, the deposit in court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder." 7 Charles Alan Wright et al. Federal Practice and Procedure § 1719 (3d ed. 1998).

Attorney's fees and costs may not be awarded for normal, routine processing of insurance policies. Karnes, 2007 WL 4365732 at *2 (citing Travelers Indemnity Co. v. Israel, 354 F.2d 488, 490 (2nd Cir. 1965); Aetna U.S. Healthcare v. Higgs, 962 F. Supp. 1412, 1414 (D. Kan. 1997); Companion Life Ins. Co. v. Schaffer, 442 F. Supp. 826, 830 (S.D.N.Y. 1977)). Furthermore, the fees awarded must not significantly diminish the value of the asset. Id.; Bush v. Teachers Ins. and Annuity Ass'n of America, 2008 WL 1776684 *3 (M.D. Ala. April 16, 2008) (request for fee award equal to 9.5% of fund unreasonable). Courts have awarded fees in amounts varying between 0.1% and 15% of the interpleaded funds, depending upon the degree of

complexity of the case.  Prudential Ins. Co. of America v. Boyd, 781 F.2d 1494 (11th Cir. 1986) (approving award of fees and costs in an amount equal to 1.6% of the interpleaded funds); Unum Life Ins. Co. of America v. Kaleo, 2006 WL 1517257 (M.D. Fla. May 24, 2006) (awarding fees equal to 3.125% of total fund); Fresh America Corp. v. Allen Lund Co., 2005 WL 2124133 *3 (N.D. Tex. Sept. 1, 2005) (in "particularly complicated" interpleader case, fee award that reduced total stake by 15% was not unreasonable); Karnes, 2007 WL 4365732 *2  (awarding fees equal to 6.6% of total fund); Primerica Life Ins. Co. v. Walden, 170 F. Supp. 2d 1195, 1200 (S.D. Ala. 2001) (awarding fees equal to less than one-tenth of a percent of the fund); Noeller v. Metropolitan Life Ins. Co., 190 F.R.D. 202, 208 (E.D. Tex. 1999) (awarding fees equal to approximately 5.7% of interpleaded funds).

In this case, plaintiff seeks an award of fees and costs equal to nearly 8.5% of the funds.  Defendants object to fees associated with identifying and locating possible beneficiaries, tasks which defendants describe as the ordinary work of an insurer.  Plaintiff notes that it was required to identify and serve all potential claimants, including the decedent's children and step-children, one of whom was a minor and the other of whom had a guardian.  In addition, plaintiff had to prepare four, and file three, motions for entry of default and for default judgment, which could have been avoided had defendants filed answers on a timely basis.

To determine the amount of a reasonable attorney fee, the Court employs the "lodestar" method.  See H.J., Inc. v. Flygt Corp., 925 F.2d 257, 259-60 (8th Cir. 1991).  In determining a "reasonable" fee award, the Court begins by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The party seeking litigation fees bears the

burden to provide "evidence of the hours worked and the rate claimed." Northeast Iowa Citizens for Clean Water v. Agriprocessors, Inc., 489 F.Supp.2d 881, 900 (N.D. Iowa 2007). Once the Court has determined the lodestar amount, several other factors may be considered to determine whether the fee should be adjusted upward or downward.[2] Hensley, 461 U.S. at 434.

A reasonable hourly rate is calculated based on the attorney's regular hourly rates as well as the prevailing market rates in the community. Blum v. Stenson, 465 U.S. 886, 896 (1984); H.J. Inc., 925 F.2d at 260. In determining a reasonable hourly rate, the Court may consider the skill of representation, difficulty of work performed, counsel's experience, and counsel's reputation. Hensley, 461 U.S. at 433. Plaintiff seeks $295.00 per hour for the services of partner Alan S. Breckenridge, $210.00 per hour for six-year attorney Jessica J. Hulting before October 1, 2010 and $215.00 per hour thereafter, and $150.00 per hour for paralegal Tricia Seay. Missing from the current record is evidence of the prevailing rates in the community for attorneys of the experience and reputation of Mr. Breckenridge and Ms. Hulting. See Balaban v. Lincoln County Ambulance District, No. 4:06CV1268 CDP, order at 3-4 (E.D. Mo. Apr. 9, 2008)

---

[2]Other factors the court may consider are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (limited by Blanchard v. Bergeron, 489 U.S. 87 (1989)); see also Arbor Hills Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 552 F.3d 182, 186-90 (2nd Cir. 2008) (discussing interplay of lodestar approach and Johnson factors).

(plaintiff supported requested rates with affidavits and cases discussing billing rates). Defendants assert that the requested hourly rates are excessive, relying on American Life Ins. Co. v. Karnes, 2007 WL 4365732, *3 (W.D. Mo. Dec. 11, 2007) (finding that $200 per hour is at the upper range of reasonableness for legal services in mid-Missouri). Karnes addressed the prevailing rates in a lower-cost market, for work completed three years earlier than in the present case and thus is not particularly useful to assessing the rates requested here. Based upon its independent knowledge of the prevailing rates in this area, the Court concludes that the requested rates are reasonable.

Where the documentation of hours expended is inadequate, the district court may reduce the award accordingly. Hensley, 461 U.S. at 433. The award also may be reduced to exclude excessive, redundant, or unnecessary hours. Id. "Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for 'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." H.J. Inc., 925 F.2d at 260.

The billing records in this matter are sufficiently detailed to allow the Court to complete a meaningful review. Based on that review, the Court concludes that some of the billings are excessive or redundant. The time spent by the professionals in conferring with one another, whether by email or in person, is excessive for this case. In those few instances in which two professionals have both billed for a conference, the Court has allowed the time spent by the most senior person only. The Court has also disallowed as redundant time spent correcting the motion to deposit funds and the Disclosure of Corporation Interests Certificate. In addition, an excessive amount of

time was spent on researching service issues and drafting the default motions. Finally, the Court has disallowed fees for clerical or secretarial tasks, such as writing checks, preparing mail, making copies and e-filing. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 553 (7th Cir. 1999) (fees for "simple administrative tasks" disallowed); see also Torgeson v. Unum Life Ins. Co. of America, 2007 WL 433540 *5 (N.D. Iowa Feb. 5, 2007) (party not entitled to reimbursement for expenses that are part of normal office overhead) (citing Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir.2001)).

Based upon its review, the Court will award fees for 8 hours of Alan Breckenridge's time, 21.2 hours of Jessica Hulting's time at the rate of $210 per hour, and 6.6 hours of her time at the rate of $215 per hour, and 16.7 hours of Tricia Seay's time, for a total of $10,736.00. This amounts to 4.6% of the total fund, a percentage the Court considers appropriate given the additional tasks of locating and serving the defendants and preparing default motions.

Turning to plaintiff's request for costs, taxable costs include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and costs for making copies of any materials necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts and interpreters. See 28 U.S.C. § 1920 (1)-(6). Plaintiff seeks costs for long-distance calls, photocopies, telecopies, PACER service fees, use of private process servers, messenger services, and the filing fee. Plaintiff has failed to provide sufficient detail to determine whether the photocopies were "necessarily obtained for use in the case," and the Court does not consider costs for messenger services to be taxable.

Similarly, costs for long-distance calls, PACER service fees, and messenger services are properly considered part of the law firm's overhead and the Court will disallow them. The Court will thus allow plaintiff to recover $350.00 for the filing fee and $157.50 for the cost of a private process server.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for discharge and award of attorney's fees [Doc. #37] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff shall prepare and file a proposed disbursement order for the payout of $11,243.50 for its attorney's fees and costs. See E.D. Mo. L.R. 13.04(D)(2).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of February, 2011.